JASON R. FLANDERS (Bar No. 238007)
Email: jrf@atalawgroup.com
ANTHONY M. BARNES (Bar No. 199048)
Email: amb@atalawgroup.com
KENYA S. ROTHSTEIN (Bar No. 340854)
Email: ksr@atalawgroup.com
AQUA TERRA AERIS (ATA) LAW GROUP
8 Rio Vista Ave.
Oakland, CA 94611
Telephone: (917) 371-8293

*Attorneys for Plaintiff*
CALIFORNIA SPORTFISHING PROTECTION ALLIANCE

**UNITED STATE DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a California non-profit corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ARCTIC GLACIER U.S.A., INC., a Delaware corporation,<br><br>Defendant. | Case No.: 4:26-cv-00437-JST<br><br>**~~[PROPOSED]~~ CONSENT DECREE** |

# CONSENT DECREE

**WHEREAS,** California Sportfishing Protection Alliance ("CSPA" or "Plaintiff") is a non-profit entity dedicated to protecting California surface waters from pollution and degradation, among other objectives;

**WHEREAS**, Arctic Glacier U.S.A., Inc. ("Arctic Glacier" or "Defendant") operated an industrial facility at 43960 Fremont Blvd., Fremont, CA 94538 ("WDID") 2 01I029366 ("Facility");

**WHEREAS**, on or about February 18, 2026, Reddy Ice, LLC ("Reddy Ice") acquired Arctic Glacier;

**WHEREAS**, on or about February 19, 2026, Arctic Glacier merged into Reddy Ice and Reddy Ice is the surviving entity;

**WHEREAS**, Reddy Ice assumed all obligations under the lease for, and is now the operator of, the Facility;

**WHEREAS**, Reddy Ice is responsible for all obligations under this Consent Decree;

**WHEREAS**, the Facility's industrial purpose is the manufacture, packaging, distribution, and sale of ice and the Facility is categorized under Standard Industrial Classification Code ("SIC") 2097, establishments primarily engaged in manufacturing ice;

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order No. 2014-0057-DWQ, and as amended by Water Quality Orders Nos. 2015-0122-DWQ and Order No. 2018-0028-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq*. ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, Defendant's operations at the Facility resulted in discharges of pollutants into waters of the United States and are regulated by CWA Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a stormwater pollution prevention plan ("SWPPP") and a stormwater monitoring implementation plan ("MIP"), (2) control pollutant

discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be included and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards ("WQS"), and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

**WHEREAS**, on May 16, 2025, Plaintiff issued a notice of intent to file suit ("60-Day Notice") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Water Board"), the Executive Director San Francisco Bay Regional Water Quality Control Board ("Regional Water Board"), and the Regional Administrator of the EPA Region IX, alleging violations of the CWA and the General Permit at the Facility;

**WHEREAS**, on January 15, 2026, CSPA filed a complaint against Defendant in the United States District Court for the Northern District of California, Civil Case No. 4:26-cv-00437-JST ("Complaint");

**WHEREAS**, on April 30, 2026, CSPA filed a Motion for Leave to file a First Amended Complaint against Defendant, which is pending and has not been ruled on by the Court;

**WHEREAS**, Plaintiff's [Proposed] First Amended Complaint alleges Defendant has and continues to inadequately sample, monitor, and report, which prevents Defendant, regulatory agencies, and the public, from adequately analyzing its BMPs to prevent the exposure of pollutants to storm water and to prevent discharges of polluted storm water and non-storm water from the Facility into Coyote Creek and the San Francisco Bay ("Receiving Waters");

**WHEREAS**, Defendant denies the allegations in the Complaint, Proposed First Amended Complaint, and 60-Day Notice, and Defendant neither admits nor denies the factual allegations and legal conclusions in this Consent Decree;

**WHEREAS**, Plaintiff and Defendant (collectively "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions

appropriate to resolving the allegations set forth in the 60-Day Notice and Complaint without further proceedings;

**WHEREAS**, all actions taken by the Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

2. Venue is appropriate in the Northern District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District;

3. The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

4. CSPA has standing to bring this action;

5. The Court shall retain jurisdiction over this action for purposes of interpreting, modifying or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issue raised within the one (1) year term of this Consent Decree

## I. OBJECTIVES

6. It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the CWA, and to resolve all issues alleged by CSPA in its 60-Day Notice and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7. In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II. AGENCY REVIEW AND CONSENT DECREE TERM

### A. Agency Review of Consent Decree

8. Agency Review. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies"), within three (3) business days of the final signature of the Parties, for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, copies of which shall be provided to Defendant. In the event that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies.

9. Court Notice. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order coordinate the Court's calendar with the 45-day review period.

10. Entry of Consent Decree. Following expiration of the Federal Agencies' 45-day review period, Plaintiff shall submit the Consent Decree to the Court for entry.

### B. Effective Date and Term of Consent Decree

11. Effective Date. The Effective Date of this Consent Decree shall be the date of entry by the Court.

12. Term & Termination. This Consent Decree shall terminate one (1) year from the Effective Date, unless Defendant has earlier certified and submitted the required permit registration documents for No Exposure Certification Coverage via SMARTS, in which case this Consent Decree shall terminate upon notice by Defendant that this has been completed. Provided, however, that if one of the Settling Parties has invoked Dispute Resolution in accordance with Section IV of this Consent Decree, in which case the Consent Decree will terminate within the earlier of fifteen (15) days of written notice by the Settling Party that invoked Dispute Resolution that the dispute has been fully resolved or an order of the Court resolving the dispute and terminating the Consent Decree. For the avoidance of doubt, in the event one of the Settling Parties has invoked Dispute Resolution, any commitments listed under Section III of this Consent Decree and complied with by Defendant will

immediately terminate, but the commitments in dispute and the rest of the Consent Decree provisions will remain in effect.

## III. COMMITMENTS OF THE SETTLING PARTIES

### A. Sampling at the Facility

13. During the Term of this Consent Decree, Defendant shall collect and analyze samples of storm water discharge from each Discharge Location designated in the SWPPP from at least four (4) Qualifying Storm Events (as defined under Section XI.B.1 of the General Permit) ("QSEs") during facility operating hours and when conditions are safe, as required by the General Permit (i.e., two QSEs during the first half of the reporting year and two QSEs during the second half of the reporting year). Arctic Glacier shall sample the first QSE of each half of the reporting year. A QSE, defined under Section XI.B.1 of the General Permit, is a precipitation event that produces a discharge for at least one (1) drainage area and is preceded by forty-eight (48) hours with no discharge from any drainage area. Any failure to collect samples as required by this Consent Decree shall be documented and submitted to CSPA in writing within ten (10) days of the date a sample should have been collected but was not. If, prior to February 1 of a reporting year, Defendant has collected samples from two (2) or fewer qualifying storm events, Defendant shall, to the extent feasible, collect samples during as many QSEs as necessary until a minimum of 4 storm events have been sampled for the reporting year. No two (2) samples may be from the same storm event.

14. <u>Rain Gauge/Sensor</u>: Defendant shall install and maintain an electronic rain gauge or sensor at the Facility within ten (10) business days of the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendant shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree.

15. <u>Sampling Parameters</u>: All samples collected pursuant to this Consent Decree shall be analyzed for the parameters listed in Table 1.

16. Laboratory and Holding Time: Except for pH samples, delivery of all samples to a California state certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a calibrated portable instrument for pH in accordance with the manufacturer's instructions.

17. Detection Limit: Defendant shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the General Permit and Table 1 below.

18. Reporting: Defendant shall provide complete laboratory results of all samples collected at the Facility to CSPA within ten (10) days of receiving the results.

**TABLE 1**

| Analytes | Values | Source of Limit |
|---|---|---|
| Oil & Grease | 15 mg/L<br>25 mg/L | Annual NAL<br>Instantaneous NAL |
| pH | 6-9 s.u. | Instantaneous NAL |
| Total Suspended Solids | 100 mg/L<br>400 mg/L | Annual NAL<br>Instantaneous NAL |

### B. VISUAL OBSERVATIONS

19. Visual Observations: During the life of this Consent Decree, Defendant shall conduct the visual observations required by Section XI.A.1 of the General Permit every other week during the wet season, and will otherwise conduct visual observations in accordance with Section XI.A of the General Permit. As used in this Paragraph 19, the term "wet season" shall mean the period beginning on October 1 and ending on April 30.

20. Visual Observations Records: Defendant shall maintain observation records to document compliance with paragraph 19 and shall provide CSPA with a copy of those records within twenty-one (21) days of receipt of a written request from CSPA for those records.

### C. TRAINING

21. Employee Training Program: Within forty-five days (45) of the Effective Date, Defendant shall conduct an employee training session that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve

compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree:

a. Language. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit.

b. Training shall be provided by a Qualified Industrial Storm Water Practitioner ("QISP", as defined in Section IX.A of the General Permit) familiar with the requirements of this Consent Decree and the General Permit.

c. Sampling Training: Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree and the General Permit, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory.

d. Visual Observation Training: Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

e. Employees: All Designated Employees at the Facility shall participate in the training session.

f. The Defendant shall maintain records of the training session to document compliance with this paragraph and shall provide CSPA with a copy of these records within fourteen (14) days of receipt of a written request.

22. SWPPP and Monitoring Implementation Plan ("MIP") Revisions and Update: Within thirty (30) days of the Effective Date, Defendant shall amend the Facility's SWPPP and MIP to incorporate the requirements in this Consent Decree, as appropriate.

**D. COMPLIANCE MONITORING AND REPORTING**

23. Document Provision. During the term of this Consent Decree, Defendant shall notify and submit documents to CSPA as follows:

a. Defendant shall copy CSPA on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Water Board, the State Water Board, and/or any state or local agency, county or municipality.

b. Any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Defendant from the Regional Water Board, the State Water Board, and/or any state or local agency, county, municipality shall be sent to CSPA within four (4) business days of receipt by Defendant. Defendant shall mail paper copies or email electronic copies of documents to CSPA at the relevant notice address contained below.

24. Compliance Monitoring. Defendant agrees to partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree by paying One Thousand Dollars ($1,000.00) within sixty (60) days of the Effective Date made payable via ACH payment, wire transfer, or check. If by check, payment is payable to: Aqua Terra Aeris Law Group LLP, Attn: Anthony M. Barnes and delivered by overnight carrier (no signature required) to Aqua Terra Aeris Law Group, 8 Rio Vista Ave, Oakland, CA 94611. Aqua Terra Aeris Law Group shall provide electronic payment instructions within three (3) days of the Effective Date.

25. Failure to submit payment as required under Paragraph 24 will constitute breach of the Consent Decree.

### E. Environmentally Beneficial Project, Litigation Fees and Costs, Missed Deadlines, and Interest

26. Environmentally Beneficial Project: To fund an environmentally beneficial project that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in the South San Francisco Bay and its tributaries, including Coyote Creek. Defendant agrees to make a total payment of Fifteen Thousand Dollars ($15,000.00) to the Rose Foundation made within sixty (60) days of the Effective Date, payable via ACH payment, wire transfer, or check. If by check,

payment is payable to the Rose Foundation for Communities and the Environment and sent via overnight carrier (no signature required) to Rose Foundation, 201 4th St APT 102, Oakland, CA 94607. Defendant shall provide CSPA with a copy of such payment. Aqua Terra Aeris Law Group shall provide electronic payment instructions within three (3) days of the Effective Date.

27. CSPA's Fees and Costs: Defendant agrees to pay a total of Fifty Thousand ($50,000.00) to CSPA to partially reimburse Plaintiff for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and any and all other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter. The payment shall be made payable via ACH payment, wire transfer, or check. If by check, payment is payable to: Aqua Terra Aeris Law Group LLP, Attn: Anthony M. Barnes and delivered by overnight carrier (no signature required) to Aqua Terra Aeris Law Group, 8 Rio Vista Ave, Oakland, CA 94611. Aqua Terra Aeris Law Group shall provide electronic payment instructions within three (3) days of the Effective Date.

28. Defendant shall make a remediation payment for each missed deadline included in this Consent Decree that is not excused by CSPA in writing for an extension of that particular deadline. If Defendant fails to sample the first QSE in each half of the year and/or fails to sample a second QSE in each half of the year, Defendant shall make a remediation payment of five thousand and five hundred dollars ($5,500.00). The remediation payment for any other missed deadlines shall be one thousand dollars ($1,000.00), unless Defendant cures the deficiency within 5 business days of the missed deadline. Remediation payments shall be made via ACH payment, wire transfer, or check. If by check, payment is payable to: Rose Foundation for Communities and the Environment, ATTN: Rose Foundation, 201 4th Street, Ste. 102, Oakland, California 94607. Defendant agrees to make the stipulated payment within thirty (30) days of a missed deadline or failure to sample. Defendant shall provide CSPA with a copy of each such payment at the time it is made.

29. Interest on Late Payments: Defendant shall pay interest on any payments, fees, or costs owed to CSPA under this Consent Decree that CSPA has not received by the due date. The interest shall accrue starting the first day after the payment is due and shall be computed at a rate of 1% per

month (12% per year). Interest on late payments shall be made payable to CSPA and sent via ACH payment, wire transfer, or check. If by check, payable to the address listed in paragraph 49, below.

## IV. DISPUTE RESOLUTION

30. This Court shall retain jurisdiction over this matter for the term of this Consent Decree for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

31. Meet and Confer. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) calendar days from the date of the notice.

32. Settlement Conference. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in paragraph 31, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Northern District of California. The Parties agree to request an expedited hearing schedule on the motion.

33. In resolving any dispute arising from this Consent Decree before the Court, the Parties shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the CWA, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions.

## V. MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE

34. Plaintiff's Waiver and Release of Defendant. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, releases Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were or could have been raised based on the facts alleged in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

35. Defendant's Waiver and Release of Defendant. In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers,

directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

36. Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Water Board, Regional Water Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the General Permit or the CWA occurring or arising after the Effective Date.

## VI. MISCELLANEOUS PROVISIONS

37. No Admission of Liability. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as an admission, finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

38. Counterparts. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

39. Authority. The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

40. Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the CWA, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

41. Full Settlement. This Consent Decree constitutes a full and final settlement of this matter.

42. Integration Clause. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

43. Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

44. Choice of Law. The laws of the United States shall govern this Consent Decree.

Effect of Consent Decree: Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the CWA, or any other law, rule, or regulation.

45. Negotiated Settlement. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

46. Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

47. Assignment. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

48. Force Majeure. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's reasonable control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, or natural catastrophe; criminal acts; civil disturbance, vandalism,

sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

49. Correspondence. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

If to Plaintiff:
Jason R. Flanders and Kenya S. Rothstein
Aqua Terra Aeris Law Group LLP
8 Rio Vista Ave.
Oakland, CA 94611
amb@atalawgroup.com

With copies to:
Chris Shutes, Executive Director
California Sportfishing Protection Alliance
1608 Francisco Street
Berkeley, CA 94703
cshutes@calsport.org

If to Defendant:
Kenneth Fernandez
General Counsel
Reddy Ice, LLC
5710 LBJ Freeway, Suite 300
Dallas, TX 75240
kfernandez@reddyice.com

With copies to:
Erica Spitzig
Taft Stettinius & Hollister LLP
301 E. Fourth Street, Suite 2800
Cincinnati, Ohio 45202
espitzig@taftlaw.com

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

50. If for any reason the U.S. Department of Justice or the Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to

modify the Consent Decree within thirty (30) days so that it is acceptable to the U.S. Department of Justice and/or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: August 3, , 2026 By: [signature]

Chris Shutes, Executive Director
California Sportfishing Protection Alliance

Dated: ______________, 2026 By: ________________________

Kenneth Fernandez
Reddy Ice, LLC

APPROVED AS TO FORM

Dated: 8/3/2026, 2026 By: [signature]

Kenya S. Rothstein
Attorney for Plaintiff
California Sportfishing Protection Alliance

Dated: ______________, 2026 By: ________________________

Erica M. Spitzig
Attorney for Defendant
Arctic Glacier U.S.A.

modify the Consent Decree within thirty (30) days so that it is acceptable to the U.S. Department of Justice and/or the Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: ______________, 2026

By: ________________________
Chris Shutes, Executive Director
California Sportfishing Protection Alliance

Dated: August 6, 2026

By: ________________________
Kenneth Fernandez
Reddy Ice, LLC

APPROVED AS TO FORM

Dated: ______________, 2026

By: ________________________
Kenya S. Rothstein
Attorney for Plaintiff
California Sportfishing Protection Alliance

Dated: August 6, 2026

By: ________________________
Erica M. Spitzig
Attorney for Defendant
Arctic Glacier U.S.A.

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.

Dated: October 14, 2026

NORTHERN DISTRICT OF CALIFORNIA

HONORABLE JON S. TIGAR
United States District Court Judge